******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# BARBARA B. HAMBURG *v.* JEFFREY R. HAMBURG
## (AC 38225)

DiPentima, C. J., and Lavine and Prescott, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved pursuant to a foreign dissolution judgment, appealed to this court from the judgments of the trial court ordering him to pay to the substitute plaintiff, R, the temporary administrator of the estate of the deceased plaintiff, certain funds that the defendant had misappropriated from his children's education accounts, and granting the motion to intervene filed on behalf of his daughter, A. The foreign dissolution judgment and a subsequent stipulated agreement both required the defendant to place funds for the children's education into certain accounts. R filed an application for order to show cause as to why an order should not enter that the defendant, inter alia, make payments to R to reimburse funds the defendant had misappropriated from the children's education accounts. Subsequently, the defendant filed a motion to dismiss, in which he claimed that R lacked standing and, therefore, that the court lacked subject matter jurisdiction over that portion of the action. The trial court denied the defendant's motion to dismiss, granted in part R's application for order to show cause, and ordered the defendant to make payments on the debt owed to the children. On appeal, the defendant claimed that the trial court improperly determined that because he previously had failed to challenge R's standing at the time R filed a motion to be substituted as the party plaintiff, he could not oppose the application for an order to show case on the ground of standing. *Held*:

1. The trial court improperly denied the defendant's motion to dismiss filed in response to R's application for order to show cause, that court having erroneously concluded that R had standing to prosecute an action for the repayment of the funds that the defendant took from the children's education accounts: that court improperly determined that because the defendant did not object to R's motion to be substituted as the plaintiff, he was precluded from questioning R's standing to pursue the moneys owed the children, as the issue, at the time R filed the motion to be substituted as the plaintiff, was whether R had standing to pursue the decedent's claims against the defendant that had been reduced to judgment, whereas the standing issue raised by the application for order to show cause concerned whether R, on behalf of the decedent's estate, could pursue the children's claims against the defendant, which had not previously been raised or litigated, and, therefore, the defendant properly raised the issue of standing, which may be raised at any time; moreover, R failed to demonstrate standing with respect to the moneys the defendant owed the children, as R did not point to any evidence presented demonstrating a personal and direct interest in the money the defendant owed his children, R did not claim the existence of a fiduciary relationship with the children, and the court made no factual finding that R had a direct and personal interest in the moneys or the right to collect the funds on behalf of the children, unlike the direct interest R had in the money the defendant owed the decedent.

2. The trial court properly granted the motion to intervene filed on behalf of A: the evidence in the record showed that A, who had reached the age of majority, had a direct and personal interest in having the defendant reimburse her education funds, as the separation agreement and the subsequent stipulated agreement both provided that the children were to be the beneficiaries of certain accounts intended to fund their educational expenses through postsecondary school, the stipulated agreement further provided that any remaining funds in the account were to be divided between the children equally once they graduated from college, and no other party had standing to pursue repayment from the defendant of the funds he took from the education accounts for his own use; moreover, the defendant failed to establish his claim that the motion to intervene should have been denied because it was not timely, and he failed to show that he was prejudiced by the court's granting of A's

motion to intervene to obtain the moneys he took from her education account.

Argued January 3—officially released June 5, 2018

*Procedural History*

Action to enforce a foreign judgment of dissolution, brought to the Superior Court in the judicial district of New Haven, where the court, *Abery-Wetstone, J.*, rendered a modified judgment in accordance with an agreement of the parties; thereafter, the court, *Abery-Wetstone, J.*, granted the motion to substitute Richard Beach, the temporary administrator of the estate of the named plaintiff, as the plaintiff; subsequently, the court, *Emons, J.*, denied the defendant's motion to dismiss the substitute plaintiff's motion to show cause for the defendant's failure to comply with certain orders and granted in part the substitute plaintiff's motion to show cause, and the defendant appealed to this court; thereafter, the court, *Emons, J.*, granted the motion to intervene filed by Barbara A. Hamburg, and the defendant filed an amended appeal with this court; subsequently, the court, *Emons, J.*, denied the defendant's motion for an articulation. *Reversed in part; judgment directed in part; further proceedings.*

*Chris R. Nelson*, for the appellant (defendant).

*Richard W. Callahan*, for the appellees (substitute plaintiff and intervening plaintiff).

*Opinion*

LAVINE, J. In this protracted postmarital dissolution action, the defendant, Jeffrey R. Hamburg, appeals from the judgments of the trial court (1) ordering him to pay to the estate of the deceased plaintiff, Barbara B. Hamburg (decedent), funds he had misappropriated from his children's education accounts, and (2) granting the motion to intervene filed on behalf of his daughter, Barbara A. Hamburg (Ali). On appeal, the defendant claims that the court improperly (1) denied his motion to dismiss for lack of subject matter jurisdiction and (2) granted the motion to intervene. We agree that the trial court erred when it denied the defendant's motion to dismiss but conclude that it properly granted Ali's motion to intervene. We, therefore, reverse in part and affirm in part the judgments of the trial court.

A lengthy factual and procedural history underlies the defendant's appeal. The decedent and the defendant were married in March, 1989, and had two children: a son, Madison Hamburg, born in 1991, and a daughter, Ali, born in 1993. In 2001, the decedent commenced an action for dissolution of marriage in the Superior Court of Fulton County, Georgia, where the decedent and the defendant reached an agreement (separation agreement) that was incorporated in the Georgia court's September 5, 2002 judgment dissolving their marriage. Among other things, the judgment required the defendant to pay the decedent alimony and child support and to place funds for the children's education in certain accounts.[1]

On April 5, 2005, the decedent filed a certified copy of the Georgia dissolution judgment in our Superior Court pursuant to General Statutes § 46b-71,[2] and the trial court domesticated the Georgia judgment. The decedent and the defendant subsequently filed numerous motions for contempt in which they claimed, primarily, that the other had failed to comply with his or her financial obligations under the separation agreement. On March 6, 2009, the court, *Markle, J.*, issued a memorandum of decision with respect to the parties' postjudgment motions. The court found that the defendant was in wilful violation of the dissolution judgment that required him to pay the decedent $2000 per month for child support for the period of October, 2007, through February, 2009. The child support arrearage was $32,000 at that time. The court ordered the defendant to pay the decedent $16,000 on or before March 31, 2009, and to pay the decedent an additional $1000 a month in child support until the arrearage was paid. The court, however, denied the defendant's motion to modify his child support obligation, after finding that there had been no substantial change downward in his financial circumstances. In fact, the court found that his income had increased. With respect to the decedent's motion for contempt for the defendant's failure to pay

educational and medical expenses for the children, the court ordered the decedent and the defendant to family relations for mediation.[3]

During a hearing on June 4, 2009, Judge Markle heard evidence that, in 2005, there was $150,000 in the education account of each child. On the date of the hearing, the defendant testified that there was then remaining $10,050 in Madison Hamburg's account and $23,000 in Ali's account. He also testified that he had taken the children's funds for his own use. The court again found the defendant in contempt and ordered him incarcerated until he paid $8000 to purge the contempt.

On November 24, 2009, the decedent and the defendant appeared before the court on a motion for contempt and a motion to modify the dissolution judgment that had been filed by the decedent. The documents presented to the court demonstrated that the defendant had taken funds from the children's education accounts for his personal use. After he was advised by counsel, the defendant invoked his right to remain silent. At the request of the parties, the court continued the matter to permit the decedent and the defendant to negotiate a settlement.

On December 23, 2009, the court, *Abery-Wetstone, J.*, opened the judgment of dissolution, and accepted a stipulation (2009 stipulation) from the decedent and the defendant that modified portions of the separation agreement, particularly custody and their respective financial obligations.[4] The 2009 stipulation required the defendant to make payments on the arrearage owed the decedent pursuant to a court-ordered schedule. The court ordered the decedent and the defendant to appear in court periodically so it could monitor the defendant's compliance with the 2009 stipulation. On February 3, 2010, during a compliance hearing, the defendant, who previously had invoked his right to remain silent with respect to the children's education funds, did so again. The court found that the defendant had the ability to pay the sums ordered under the 2009 stipulation and found him in wilful contempt for failing to pay. The court ordered him to reinstate his life insurance policy and provide the decedent with proof of the policy's beneficiaries. The court warned the defendant that if he failed to comply with its orders, he would go to jail.

The defendant and counsel for the parties appeared in court on March 3, 2010, but the decedent did not. She later was discovered at her home, murdered. On March 12, 2010, Richard Beach, the temporary administrator of the decedent's estate, filed a motion to be substituted as the party plaintiff (substitute plaintiff).[5] The defendant voiced no objection to the motion to substitute, and Judge Abery-Wetstone granted it on March 17, 2010. At the time, however, the court questioned whether the children should have counsel to protect their rights under the 2009 stipulation. Counsel

for the estate did not agree that the children needed their own counsel. At that time, the defendant's bankruptcy counsel informed the court that the defendant had, that day, filed a petition in bankruptcy.

On March 24, 2010, the defendant and the substitute plaintiff appeared before Judge Markle to enter into an agreement (2010 agreement).[6] The court approved the 2010 agreement.[7]

Between April 23, 2010, and February 1, 2012, the defendant and the substitute plaintiff appeared in court many times for compliance hearings.[8] On November 7, 2011, the substitute plaintiff filed a motion for contempt against the defendant, which was heard by the court, *Conway, J.*, on February 1, 2012. During the hearing, the substitute plaintiff represented that the defendant had not repaid any of the moneys he had taken from the children's education funds. The court found the defendant in contempt and ordered him committed to the custody of the Commissioner of Correction and that he pay $50,000 to purge the contempt. On April 18, 2012, the substitute plaintiff agreed to have the record reflect that $20,000 had been tendered toward the $50,000 purge amount, and requested that the court stay the order of incarceration. The court, *Gould, J.*, ordered the defendant released from incarceration and that he not leave either Connecticut or New York without a court order.[9] On June 5, 2012, Judge Gould also ordered the defendant to continue to pay the estate $500 per week toward the remaining $30,000 purge amount. The defendant did not comply.

On March 12, 2015, the substitute plaintiff filed an application for order to show cause why an order should not enter that the defendant (1) reimburse the estate for the fees and costs it incurred to defend the bankruptcy action; (2) commence making payments on the debt owed to the children; and (3) provide proof that he is maintaining life insurance to secure the judgment debt. On May 13, 2015, in response to the substitute plaintiff's application for order to show cause, the defendant filed a motion to dismiss, claiming that the substitute plaintiff lacked standing and, therefore, the court lacked subject matter jurisdiction over that portion of the action.

In his memorandum of law in support of his motion to dismiss, the defendant argued with respect to the claims made in the application for order to show cause that the substitute plaintiff had failed to demonstrate why his "obligations" inure to its benefit and how the substitute plaintiff is aggrieved by his actions or inactions in the context of the present case. He argued that the substitute plaintiff is neither classically nor statutorily aggrieved by the debt he owes the children and his failure to procure life insurance. The defendant also argued that the substitute plaintiff lacks standing to pursue a claim against him for the claimed attorney's fees and costs to defend the bankruptcy proceeding.

Moreover, the defendant argued that the substitute plaintiff could not rely on the 2010 agreement and related court order, as the order was improper and void as a matter of law. More specifically, the defendant argued that upon the decedent's death, the court lacked subject matter jurisdiction to enter an order approving the 2010 agreement.

The substitute plaintiff objected to the motion to dismiss on the grounds that "(1) [the] [s]ubstituted plaintiff is [a] proper party; (2) [r]es judicata/collateral estoppel; (3) [the] [s]ubstituted party has interests; [and] (4) [p]ublic policy." On June 17, 2015, the court, *Emons, J.*, denied the defendant's motion to dismiss after finding that the "children's claim to the money is solely through the estate."[10] The court scheduled a hearing on the merits of the application to show cause.

On July 14, 2015, the defendant filed an objection to the substitute plaintiff's application for order to show cause in which he claimed that he was sixty-six years old, has a debilitating back injury, was unemployed, and did not have the financial ability to pay the funds requested by the substitute plaintiff. He also claimed that the substitute plaintiff's request is not enforceable on the ground of laches, his obligation to pay funds to the estate ended when the children reached the age of majority, and the substitute plaintiff had no authority to prosecute a motion on behalf of the children. The defendant also objected to the use of any funds intended to benefit the children to pay the counsel fees of the estate. Judge Emons again found that the estate, through the substitute plaintiff, had standing to pursue the judgment debt and, on July 14, 2015, ordered the defendant to pay to counsel for the estate $500 per week to be applied toward the $324,000 plus 4 percent annual interest that the defendant owed the children. The court ordered counsel for the estate to place the moneys the defendant paid in a trust account until further order of the court. The defendant appealed from the judgment on August 3, 2015.[11]

On September 9, 2015, counsel for the estate filed a motion to intervene on Ali's behalf for the limited purpose of asserting her rights and interests "in the enforcement of court orders related to the [Uniform Gifts to Minors Act] funds that are the subject of this court's jurisdiction."[12] The defendant objected to Ali's motion to intervene as a matter of right on the ground that she lacked standing to do so and argued that she cannot satisfy the intervention test set forth in *Kerrigan* v. *Commissioner of Public Health*, 279 Conn. 447, 456–57, 904 A.2d 137 (2006). He further argued that, although he does not agree that the substitute plaintiff has standing to recoup the funds he took from the children's education accounts, given the court's ruling on the application for order to show cause, he claimed that Ali's interest in the funds was being represented ade-

quately by the estate and, therefore, Ali did not need to be made a party. He also argued that by permitting Ali to intervene, multiple parties would be pursuing him for the moneys he took from the children's education fund. Judge Emons granted Ali's motion to intervene. The defendant amended his appeal to challenge the court's granting of Ali's motion to intervene.

On appeal, the defendant claims that (1) the substitute plaintiff lacks standing to prosecute the present action for repayment of moneys he owes the children and (2) Ali failed to demonstrate that she has a direct and substantial interest in the case and, therefore, she also lacks standing. Standing is at the core of each of the defendant's claims.[13] We agree with the defendant that the substitute plaintiff lacks standing to prosecute repayment of the children's education funds and, therefore, the court improperly denied the motion to dismiss and granted the application for order to show cause requiring him to make payments to counsel for the estate to reimburse the moneys he owes the children. We conclude, however, that the court properly granted Ali's motion to intervene, as she has a direct interest in the repayment of the education funds, but that she must assert her rights against the defendant in the civil, not family, court.

We begin by setting forth the legal principles regarding standing. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [When] a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time. . . .

"Because lack of standing implicates the trial court's subject matter jurisdiction, it is properly raised by way of a motion to dismiss. . . . Our standard of review of a trial court's findings of fact and conclusions of law in connection with a motion to dismiss is well-settled. A finding of fact will not be disturbed unless it is clearly erroneous. . . . [If] the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts . . . . Thus, our review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Property Asset Management, Inc.* v. *Lazarte*,

163 Conn. App. 737, 745–46, 138 A.3d 290 (2016).

"A motion to dismiss [for lack of standing] . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . .

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Citations omitted; internal quotation marks omitted.) *Emerick* v. *Glastonbury*, 145 Conn. App. 122, 127–28, 74 A.3d 512 (2013), cert. denied, 311 Conn. 901, 83 A.3d 348 (2014).

"The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by *the focus on whether the plaintiff is the proper party to assert the claim at issue.*" (Emphasis added.) *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 347, 780 A.2d 98 (2001). "The plaintiff bears the burden of proving subject matter jurisdiction, whenever and however raised." (Internal quotation marks omitted.) *Emerick* v. *Glastonbury*, supra, 145 Conn. App. 128.

I

The defendant first claims that the court erroneously concluded that the substitute plaintiff has standing to prosecute an action for repayment of the funds he took from the children's education accounts. He argues, among other things, that the court improperly denied his motion to dismiss by concluding that the defendant had a prior opportunity to raise his lack of standing claim at the time the temporary administrator filed his motion to be substituted as the party plaintiff. He also argues that the substitute plaintiff failed to prove that he was authorized to act on behalf of the children. We agree.

A

The defendant claims that the court improperly determined that, because he previously had failed to challenge the standing of the substitute plaintiff at the time he filed a motion to be substituted as the party plaintiff, the defendant could not oppose the application for order to show cause on the ground of standing. We agree because, at the time the substitute plaintiff filed a motion to be substituted, the issue was whether he had standing to pursue the decedent's claims against the defendant that had been reduced to judgment. The standing issue raised by the application for order to

show cause is whether the substitute plaintiff may pursue the children's claims against the defendant.

In his motion to dismiss, the defendant argued that the substitute plaintiff had failed to demonstrate in its application for order to show cause why his "obligations" inure to the benefit of the substitute plaintiff and how the substitute plaintiff, acting on behalf of the estate, is aggrieved by his actions or inactions in the context of the present case, i.e., the moneys owed to the children. In other words, he claimed that the substitute plaintiff had failed to demonstrate that he was either statutorily or classically aggrieved.

In opposing the defendant's motion to dismiss, the substitute plaintiff argued on the ground of collateral estoppel that because the defendant did not object to his motion to be substituted as the party plaintiff in March, 2010, the defendant was precluded from questioning the substitute plaintiff's standing to pursue the moneys owed the children. Judge Emons agreed with the substitute plaintiff, stating that the defendant "had ample opportunity to litigate the issue as to whether or not there was standing of the estate" when Judge Abery-Wetstone heard and ruled on the motion to substitute. Unlike the issue in the application for order to show cause, however, the issue before Judge Abery-Wetstone was whether the substitute plaintiff had standing to pursue compliance with the court's orders regarding the decedent and her estate, not the children's right to their education funds. At the time the motion to substitute the party plaintiff was granted, there was a judgment against the defendant for the tens of thousands of dollars in past due alimony and child support he owed the decedent. In its application for order to show cause, the substitute plaintiff, on behalf of the decedent's estate, was pursuing the defendant for the judgment debt he owed the children for the moneys he took from their respective education funds. As we discuss in part I B of this opinion, the substitute plaintiff lacked standing to enforce the judgment related to the children's money, and the defendant, therefore, properly raised the issue of standing and the court's subject matter jurisdiction.

On appeal, the substitute plaintiff claims that *Sousa* v. *Sousa*, 322 Conn. 757, 143 A.3d 578 (2016), controls the defendant's claim.[14] We disagree, as *Sousa* is procedurally distinct. The issue in *Sousa* was whether it was "entirely obvious" that the trial court lacked subject matter jurisdiction to open a stipulated judgment between the parties, who were former husband and wife. (Internal quotation marks omitted.) Id., 761. The parties in *Sousa* did not agree to open the modified dissolution judgment. The decedent and the defendant in the present case, however, agreed to open the dissolution judgment and enter into the 2009 stipulation. Judge Abery-Wetstone accepted the stipulation as a judgment

of the court. In his motion to dismiss, the defendant is not challenging the court's subject matter jurisdiction over the money he owed the decedent. He also is not challenging the substitute plaintiff's standing to pursue the debt he agreed to pay the decedent. With regard to the motion for order to show cause, the defendant is challenging the substitute plaintiff's standing to pursue the moneys he owes his children for having used the funds in their education accounts for himself.

The issue of whether the substitute plaintiff had standing to pursue the moneys the defendant owes his children was not raised or litigated prior to May, 2015, when the defendant filed his motion to dismiss. There is no legal basis to preclude the defendant from filing a motion to dismiss the application for order to show cause. Moreover, standing implicates the court's subject matter jurisdiction and may be raised at any time. See, e.g., *Manning* v. *Feltman*, 149 Conn. App. 224, 231, 91 A.3d 466 (2014). "Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *O'Reilly* v. *Valletta*, 139 Conn. App. 208, 212–13, 55 A.3d 583 (2012), cert. denied, 308 Conn. 914, 61 A.3d 1101 (2013).

B

The defendant also claims that the court improperly denied his motion to dismiss because the substitute plaintiff failed to prove, and the court did not find, that the substitute plaintiff had a direct interest in the moneys he took from the children's education funds. We agree.

In his brief, the defendant argues that at the time the court heard his motion to dismiss, the substitute plaintiff did not present any evidence of standing to pursue the moneys he owes his children or under what statutory or other right the substitute plaintiff may collect the money on behalf of the children.[15] As previously noted, "[a] plaintiff has the burden of proof with respect to standing." *Emerick* v. *Glastonbury*, supra, 145 Conn. App. 128. The substitute plaintiff has not directed us to any evidence presented at the time the court ruled on the motion to dismiss that would demonstrate a personal and direct interest in the money the defendant owes the children, and our review of the record did not disclose any such evidence.

The substitute plaintiff also does not claim that he has a fiduciary relationship with the children. "It is the infant, and not the next friend, who is the real and

proper party. The next friend, by whom the suit is brought on behalf of the infant, is neither technically nor substantially the party, but resembles an attorney, or a guardian ad litem, by whom a suit is brought or defended in behalf of another." (Emphasis omitted; internal quotation marks omitted.) *Lowe* v. *Shelton*, 83 Conn. App. 750, 756, 851 A.2d 1183, cert. denied, 271 Conn. 915, 859 A.2d 568 (2004). More importantly, however, the court made no factual finding that the substitute plaintiff has a direct and personal interest in those moneys or the right to collect the funds on behalf of the children, unlike a direct interest in the money the defendant owed the decedent. The substitute plaintiff, therefore, failed to carry his burden to demonstrate standing with respect to the moneys the defendant owes his children.

For the foregoing reasons, the court improperly denied the defendant's motion to dismiss filed in response to the application for order to show cause. The case is remanded to the trial court with direction to grant the motion to dismiss and to vacate the order that the defendant make periodic payments to counsel for the estate regarding the debt he owes the children.

## II

The defendant's second claim is that the court improperly granted the motion to intervene filed on behalf of his daughter. We disagree.

On September 9, 2015, counsel for the estate filed a postjudgment motion to intervene on behalf of Ali. The motion was predicated on General Statutes § 52-107[16] and the corresponding rules of practice, i.e., Practice Book §§ 25-6 and 9-18. The motion to intervene stated in part that the undersigned counsel moved on behalf of Ali to intervene for the limited purpose of asserting her rights and interest in the enforcement of the orders related to her education funds. Ali had relied on the substitute plaintiff to advance her interests, but in light of the defendant's assertion that the substitute plaintiff lacks standing, she moved to intervene.

Judge Emons determined that the defendant's "obligation goes to the estate,"[17] and that is the reason that the court denied the motion to dismiss. To the extent, however, that the defendant argued that "the money now flows to the children, who have now reached the age of majority," the court found that Ali "does have a sufficient interest and that the legal requirements are met . . . ." The court, therefore, granted Ali's motion to intervene.

On appeal, the defendant claims that the court improperly granted Ali's motion to intervene as a matter of right because she not only failed to meet her burden to establish her right to intervene, but also the motion to intervene was untimely. We disagree.

To establish that he or she is entitled to intervene as

a matter of right, "the proposed intervenor must satisfy a well established four element conjunctive test: [T]he motion to intervene must be timely, the movant must have a direct and substantial interest in the subject matter of the litigation, the movant's interest must be impaired by disposition of the litigation without the movant's involvement and the movant's interest must not be represented adequately by any party to the litigation." (Internal quotation marks omitted.) *BNY Western Trust* v. *Roman*, 295 Conn. 194, 205, 990 A.2d 853 (2010); see also *Kerrigan* v. *Commissioner of Public Health*, supra, 279 Conn. 456–57.

"A proposed intervenor must allege sufficient facts, through the submitted motion and pleadings, if any, in order to make a showing of his or her right to intervene. The inquiry is whether the claims contained in the motion, if true, establish that the proposed intervenor has a direct and immediate interest that will be affected by the judgment." *Washington Trust Co.* v. *Smith*, 241 Conn. 734, 747, 699 A.2d 73 (1997), overruled in part on other grounds by *Kerrigan* v. *Commissioner of Public Health*, supra, 279 Conn. 455.

On the basis of our review of the record, beginning with the separation agreement, the children were to be the beneficiaries of certain financial accounts intended to fund their private school and college educations. See footnote 1 of this opinion. On December 23, 2009, the decedent and the defendant agreed to open the dissolution judgment and enter into the 2009 stipulated judgment. According to the 2009 stipulation, the decedent was to open an account for the benefit of the children and the account was to be used to pay their educational expenses through postsecondary school, excluding any graduate studies. Once the children were graduated from college, any funds in the account were to be divided between the children equally. See footnote 4 of this opinion. The evidence in the record discloses Ali's direct and substantial interest in the education account. No other party has standing to pursue repayment from the defendant of the funds he took from the accounts for his own use.[18] The substitute plaintiff has no fiduciary relationship with the children and, therefore, cannot adequately represent them. Because Ali has a direct and personal interest in having the defendant reimburse the education funds, she has carried her burden and the court properly granted her motion to intervene.

The defendant also argues that Ali's motion to intervene should have been denied because it was not timely, having not been filed until after he took the present appeal. As the substitute plaintiff points out, the motion to intervene was filed after the defendant took an appeal because he appealed from the court's denial of his motion to dismiss on the ground that the substitute plaintiff lacked standing. The defendant has not

explained how, if at all, he has been prejudiced by the court's granting of Ali's motion to intervene to obtain the money the defendant—her father—took from an account that was to be used to pay for her education through college. Although the defendant was ordered to repay the moneys he took from the children's education accounts beginning on January 1, 2010, several courts have found him in wilful contempt for failing to do so. The defendant opposed the substitute plaintiff's effort to pursue repayment of the education funds on the ground that he lacked standing and, therefore, Ali filed a motion to intervene to protect her interest in the funds. The court, therefore, properly granted the motion to intervene.

The judgment denying the motion to dismiss is reversed and the case is remanded with direction to grant the motion to dismiss and to vacate the order that the defendant make periodic payments to counsel for the estate regarding the debt he owes the children. The judgment with respect to the motion to intervene is affirmed and the case is remanded for further proceedings.

In this opinion the other judges concurred.

[1] In addition, the defendant agreed to maintain life insurance "in an amount equal to the remaining balance of his minimum obligations for child support . . . . Said insurance policy or policies shall remain in full force and effect, naming [the decedent] and the minor children as beneficiary, until [the defendant] has no further financial obligation for any child . . . ."

With respect to the children's education funds, the decedent and the defendant agreed that each of them "shall maintain any and all custodial accounts held in his or her individual name for the benefit of the children. Said accounts shall be used only for the educational expenses of the children . . . . Notwithstanding the foregoing, [the defendant] shall not utilize said custodial accounts for payment of his child support obligation . . . . Each party shall provide the other party a copy of the statement for all custodial accounts in which he or she is custodian on a quarterly basis."

[2] General Statutes § 46b-71 (a) provides in relevant part: "Any party to an action in which a foreign matrimonial judgment has been rendered, shall file, with a certified copy of the foreign matrimonial judgment, in the court in this state in which enforcement of such judgment is sought . . . ."

[3] On May 14, 2009, Judge Markle ordered the defendant to pay the decedent certain counsel fees and to provide counsel for the decedent with seven years' worth of records regarding the children's education funds. On June 3, 2009, the court found the defendant in wilful contempt for failing to produce records regarding the education funds, and for failing to make any payments for current child support and toward the arrearage owed the decedent.

[4] The relevant portions of the 2009 stipulation provided in part:

"1. . . .

"b. The defendant shall pay to the [decedent] the sum of $245 per week . . . for the benefit of the minor child [Ali] . . . .

"c. The [decedent] shall open an account for the benefit of the minor children. The account shall be used to pay for the educational expenses of the minor children, through postsecondary school, excluding any graduate studies. Once both children have graduated from college, the balance of any funds in the account shall be divided between the children 50/50.

"d. The defendant shall pay to the [decedent] $324,000, plus 4 [percent] interest per annum, until the sum is paid in full. [The decedent] shall deposit the payments received into the account referenced above for the benefit of the minor children. The defendant shall pay the $324,000 plus interest at the following nonmodifiable rate . . . .

"i. The defendant shall maintain, until all financial obligations to the [decedent] and children under the judgment and orders of the court are paid in full, life insurance in the amount of $600,000, name the [decedent]

and the minor children as irrevocable, equal beneficiaries. . . .

"2. Defendant owes the [decedent] the following additional sums:

"a. $30,000 in child support arrears;

"b. $30,000 in attorney fees and costs;

"c. $25,000 toward unreimbursed medical and health related expenses; and,

"d. $25,000 toward the tuition costs for the parties' son for the payment due in January.

"e. $41,000 toward educational costs for [the] children paid by [the decedent]. . . .

"5. These orders are domestic support orders, and are in the nature of support, and are nondischargeable in bankruptcy. Defendant shall hold the [decedent] harmless and indemnify the [decedent] for any and all expenses and fees she incurs to respond to any bankruptcy petition by the defendant."

The court canvassed the parties and each of them stated that the 2009 stipulation was fair, reasonable, and in the best interests of their children. Note that in December, 2009, Madison Hamburg was eighteen.

[5] At trial and on appeal, the parties use the terms substitute plaintiff and decedent's estate interchangeably. Because an estate is not a legal entity; see *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 32, 144 A.3d 420 (2016); and the substitute plaintiff was acting in a representative capacity on behalf of the estate, we refer to the substitute plaintiff in this opinion. See *Silver* v. *Holtman*, 114 Conn. App. 438, 443, 970 A.2d 740 (2009) (fiduciary of estate has standing in representative capacity to assert rights of estate).

[6] The 2010 agreement provided in part:

"[1.] The parties agree that the court has *continuing jurisdiction over compliance* with the orders of the court. . . .

"4. The parties agree that under paragraph 1 (d) of the 12/23/09 order, the payment shall be reduced to $4500 ($1,061.67 shall be paid as current child support, which the substitute plaintiff shall use for the benefit of the minor child, and deliver to any guardian [of the minor child] once appointed by the probate court; and $3,438.33 to be applied toward the replenishment of the $324,000 debt owed to [Uniform Gifts to Minors Act]), subject to a final accounting. . . .

"7. The defendant shall immediately apply for life insurance in an amount required by the court order with at least 5 insurance companies within 7 days. He shall bring proof of the applications to the next court date. . . .

"10. All other orders, not herein modified shall remain in full force and effect.

"11. All outstanding discovery orders shall be complied with by 3/31/10." (Emphasis added.)

[7] At the time the court accepted the 2010 agreement, Judge Markel stated for the record: "First and foremost, pursuant to the first agreement that the parties agree that the court has continuing jurisdiction over *compliance* with the prior court orders entered by this court. . . . After reviewing that law, the court finds that it can accept the agreement of the parties that the court has continuing jurisdiction over the *compliance* of the outstanding court orders on this date." (Emphasis added.)

[8] On July 29, 2011, and again on May 2, 2012, the state charged the defendant with larceny in the first degree for his misappropriation of the children's education funds. See *State* v. *Hamburg*, N23N-CR-11-0121767-S, and *State* v. *Hamburg*, N23N-CR-12-0128767-S. The trial court in the criminal matters, *Keegan*, *J.*, permitted the defendant to enter the accelerated rehabilitation program on September 10, 2013, and further ordered him to comply with the family court orders for repayment within twenty-four months.

[9] The defendant resided on Park Avenue in New York City.

[10] In denying the defendant's motion to dismiss, the court stated that it has a legal and equitable interest in enforcing its orders. Although the children are no longer minors and the decedent is no longer alive, the order "was in the form of [the 2009 stipulation] for the benefit of the children. The children's claim to the money is solely through the estate." The defendant has not done what he promised to do and was ordered to do pursuant to the 2009 stipulation. The 2009 stipulation carries out a previous court order regarding postsecondary education expenses for the children. The 2009 stipulation gave rights to the decedent for the benefit of the children, one of whom was eighteen years old at the time.

The court also stated that the defendant previously had an opportunity to litigate whether the estate had an interest in the matter at the time Judge Abery-Wetstone ruled on motion 172 to substitute the temporary administrator of the estate. The court found that the estate has used other

moneys to pay the educational expense of the children to its detriment and to their detriment.

The court also found that there was "a follow-up motion . . . agreement . . . dated March 24, 2010, where . . . the estate and [the defendant] agreed that the court has continuing jurisdiction over this case." Despite the defendant's argument that the 2010 agreement is void, the defendant has adhered to part of the agreement but not to other parts. For the foregoing reasons, the court denied the defendant's motion to dismiss.

[11] On his appeal form, the defendant stated that he was appealing from the postjudgment order of "7/14/2015," as well as the denial of his motion to dismiss.

[12] No trial court made a finding as to the nature of the custodial accounts that held the moneys intended for the children's education. The 2009 stipulation makes reference to a custodial account into which the decedent was to place funds for the children's education. At the time, one of the children had already turned eighteen.

[13] In the separation agreement, the parties agreed that the application and interpretation of said agreement shall be governed by the laws of Georgia. The choice of law provision dictates matters of substance, but procedural issues such as the standard of review are governed by Connecticut law. *Ferri* v. *Powell-Ferri*, 326 Conn. 438, 447, 165 A.3d 1137 (2017). "The issue of standing is also a procedural issue and is, therefore, governed by Connecticut law." Id.

[14] In his brief, the substitute plaintiff also contends that we should not review the defendant's claim because it is inadequately briefed on appeal. We do not agree, as the substitute plaintiff's contention is predicated on collateral estoppel grounds.

[15] The defendant properly points out that, pursuant to the 2009 stipulation, the decedent was to be the custodian of the children's education accounts. General Statutes § 45a-559c sets forth the requirements for the appointment of a successor custodian upon the death of the prior custodian. The substitute plaintiff presented no evidence that the decedent designated a successor prior to her death or that a successor trustee has been appointed by the Probate Court.

[16] General Statutes § 52-107 provides: "The court may determine the controversy as between the parties before it, if it can do so without prejudice to the rights of others; but, if a complete determination cannot be had without the presence of other parties, the court may direct that such other parties be brought in. If a person not a party has an interest or title which the judgment will affect, the court, on his application, shall direct him to be made a party."

[17] We disagree with the court's determination. See part I of this opinion.

[18] Madison Hamburg, who may have an interest in the education funds, is not a party to the present action.

---