******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# THOMAS FREDO *v.* KRISTIN FREDO
## (AC 46803)

Cradle, C. J., and Elgo and Moll, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed from the trial court's judgment granting the defendant's motion for contempt with respect to the plaintiff's failure to transfer two lots of real property, one to the defendant and one to a trust for the benefit of the parties' children, pursuant to court orders. The plaintiff claimed, inter alia, that the defendant did not have standing to assert a claim regarding the lot that he was supposed to transfer to a trust for the benefit of their children. *Held*:

The trial court improperly rendered judgment for the defendant with respect to her claim regarding the lot that was supposed to be transferred to a trust for the benefit of the parties' children, as the defendant failed to demonstrate a direct or personal interest in the lot or a direct injury she had suffered as a result of the plaintiff's failure to transfer that lot and, accordingly, the defendant lacked standing to assert a claim as to that lot.

This court declined to review the plaintiff's claim that the trial court erred in finding him in contempt because his failure to transfer the lots was not wilful, as the plaintiff failed to provide this court with a transcript of the contempt hearing and, thus, the record was inadequate for review.

The trial court's monetary award to the defendant, following its finding of contempt, did not constitute an impermissible modification of a property settlement, as the award was not in response to a motion that sought modification of the court's orders but, rather, a motion for contempt that sought to effectuate those orders by transfer of the lots at issue and, because the court could not effectuate its prior orders or make the defendant whole by ordering the transfer of the lots due to the plaintiff's delay in complying with those orders, the monetary award was necessary to vindicate the court's prior orders.

This court declined to review the plaintiff's claim that the trial court's monetary award to the defendant for lost financial opportunities resulting from the plaintiff's failure to transfer the lots was not supported by the evidence, as the plaintiff failed to provide this court with the entire trial court record, without which this court would be left to speculate as to the basis of the trial court's award.

Argued April 30—officially released July 29, 2025

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Gruendel, J.*, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' settlement agreement; thereafter, the court, *Alfano, J.*, granted the defendant's motion for contempt and rendered judgment thereon, from which the plaintiff appealed to this court. *Vacated in part*; *judgment directed.*

*C. Michael Budlong*, for the appellant (plaintiff).

*John C. Lewis III*, with whom, on the brief, was *Mario Cerame*, for the appellee (defendant).

*Opinion*

CRADLE, C. J. In this postjudgment marital dissolution matter, the plaintiff, Thomas Fredo, appeals from the judgment of the trial court granting the motion for contempt filed by the defendant, Kristin Fredo, alleging that the plaintiff wilfully violated unambiguous court orders to transfer two lots of real property, one to her and another to a trust for the benefit of the parties' children. On appeal, the plaintiff claims that (1) the defendant did not have standing to assert a claim regarding the lot that he was supposed to transfer to a trust for the benefit of their children; (2) the court erred in finding him in contempt; (3) the court's monetary award to the defendant constituted an impermissible postjudgment modification of the parties' property settlement; and (4) there was no evidentiary basis for the court's award to the defendant of compensation for lost financial benefits stemming from the plaintiff's failure to transfer the lots.[1] We agree with the plaintiff's claim

---

[1] We address the plaintiff's claims in a different order than they are set forth in his appellate brief.

that the defendant lacked standing to assert a claim as to the lot that was supposed to be transferred into a trust for the benefit of the parties' children and vacate the portion of the judgment related to that lot. We affirm the judgment of the trial court in all other respects.

The record reveals the following undisputed facts and procedural history. The parties married on July 17, 1993. They have three children of the marriage: a son born in January, 1994; a daughter born in October, 1995; and a daughter born in February, 1998. In July, 2004, the plaintiff filed the underlying complaint for dissolution of marriage. On November 24, 2004, the court rendered judgment dissolving the parties' marriage. The judgment incorporated by reference the terms of a separation agreement that the parties had entered into on the same date. The separation agreement provided, inter alia, that the plaintiff was entitled to several family businesses free from any claims of the defendant. One of those businesses owned real property in North Granby that it planned to subdivide. In consideration of the defendant relinquishing any claims that she had to those businesses, the agreement provided that, upon obtaining approval for the subdivision of the North Granby property, as well as zoning approval, the plaintiff was required to transfer one lot from the subdivision to the defendant and another lot from the subdivision to a trust for the benefit of the parties' children to be used for the children's post high school education, of which the plaintiff would be the trustee.

On January 27, 2009, the defendant filed a motion for contempt alleging that the plaintiff wilfully violated the dissolution judgment in that he had failed to convey to her and failed to convey into a trust, for the benefit of the parties' children, the subdivision lots. Following a two day hearing, the court, *Hon. John R. Caruso*, judge trial referee, issued a memorandum of decision in which it declined to find the plaintiff in contempt but ordered

that he transfer the lots within thirty days. The plaintiff filed an appeal of that decision, which he withdrew after the parties entered a stipulation dated October 7, 2010 (2010 stipulation), whereby they agreed, inter alia, that the defendant would release the lis pendens she had filed on the land records in the town of Granby as to all but lots 512 and 615 of the subdivision. The stipulation further provided: "In satisfaction of his obligation contemplated in [the dissolution judgment], the [p]laintiff shall, in his discretion, transfer either Lot 615 or Lot 512 to the [d]efendant as soon as the existing development mortgage to Windsor Federal Savings Bank . . . has been satisfied . . . . The [p]laintiff shall transfer Lot 616 to the trust contemplated in [the dissolution judgment]. Such transfer shall take place as soon as the existing mortgage referred to above has been satisfied."

On March 12, 2021, the defendant filed a motion for contempt alleging that the plaintiff violated the dissolution judgment and the 2010 stipulation in that he failed to transfer the subdivision lots to her or to create a trust and transfer a lot to that trust for the benefit of their children. On December 30, 2022, following an evidentiary hearing, the court, *Alfano*, *J.*, issued a written order finding that the plaintiff wilfully had violated the orders that he transfer the lots at issue. The court reasoned: "The court finds that the plaintiff had the legal authority to transfer the lots to the defendant. Moreover, he did so with the specific knowledge and agreement of his business partner in the property. . . .

"The plaintiff acknowledges that the lots discussed in the [2010 stipulation] have not been transferred to the defendant. He explained that he does not want to and does not think he currently can transfer one or more of these lots to the defendant but that he does want to make her whole in some way. . . .

"The subdivision approval for [the North Granby property] is currently expired. It expired on July 26, 2019. . . . [U]pon the expiration date, the subdivided lots . . . effectively merged into a singular parcel. Thus, the remaining unsold '500' lots merged into a singular land parcel, now approximately 8.5 acres in size, and the remaining unsold '600' lots merged into a singular land parcel of approximately fifteen acres in size. The plaintiff and [his business partner] are currently, through their company . . . in the process of working to obtain subdivision approval for the property again. However, right now, the land previously demarcated into individual lots cannot be transferred as individual lots. . . .

"The plaintiff acknowledged that he should have transferred the lots outlined in the [2010] stipulation to the defendant after fully satisfying the mortgage [which was paid off in full on April 19, 2016]. The conditions outlined in the [2010] stipulation for the transference of the lots existed from the date of the mortgage release in April of 2016 until the expiration of the subdivision's approval in 2019. Yet, the lots were not transferred during that time period by the plaintiff to the defendant. The plaintiff testified that he thinks he has met his obligations in supporting his children. It appears he was suggesting that the transference of the lot designated to be for the benefit of the children might therefore be moot as he has satisfied his obligation in another way. The court does not agree as neither the 2004 [dissolution] judgment nor the 2010 stipulation contemplate that the plaintiff could satisfy his lot obligation relative to the children in another way. . . .

"The court has been presented with clear and convincing evidence that the plaintiff wilfully violated a clear and unambiguous court order."

Having found the plaintiff in contempt, the court then faced the task of fashioning a remedy for that contempt.

The court explained: "The current status of the [subdivision] properties leaves the path to rectifying the plaintiff's contempt less clear. . . .

"While the plaintiff currently has control of open land in the [North Granby] property expanse, which was previously designated to be the lots in question, the specific lots do not currently exist. They may be reapproved as subdivision lots within the next number of months. They may not. Currently, the identified lots are merged with others into a larger parcel of land.[2] In addition, even assuming the subdivision approval is reinstated, thereby effectively making the lots in question discrete 'lots' again, there remains the question of their alienability and accessibility because of the lack of required public improvements. Specifically, there is no approved, existing road accessing at least one of the preexisting lots. The court is concerned about awarding a potential, rather than an immediate and tangible, award to the defendant. . . .

"Testimony and evidence was presented to the court of the value of four lots in 2021 similarly situated to the lots at issue in this case. The fair market value for the lots at that time was approximately $50,000 per lot. No evidence was presented regarding the value of the lots at the time of the dissolution in 2004, or at the time of the [2010] stipulation . . . or at the time that the

---

[2] The court noted: "The defendant's perspective is that this agreement regarding the lots has been in place since 2010 and the plaintiff has thus had at least nine years to effectuate the contemplated transfer. The defendant argues that the two merged parcels of land which have now subsumed the lots at issue (Lots 512 or 615; Lot 616) should now be transferred to the defendant in satisfaction of the terms of the [2010 stipulation]. The defendant points out that these larger, merged lots are alienable and without restriction as to conveyance at this time. While the expert testimony supports this position, the two merged lots are also significantly greater in size and more valuable than the lots initially designated to be transferred to the defendant. The previously existing Lot 512 was approximately 2.5 acres, Lot 615 approximately 1.3 acres and Lot 616 approximately 1.8 acres."

mortgage was fully satisfied in 2016. It is clear to the court that regardless of the market value of the lots, the defendant has also lost out on any potential financial benefit of being an owner of the two lots in question for the past six years. . . .

"Under these facts and circumstances, the court must fashion an equitable remedy to compensate the defendant for the plaintiff's contempt of the court order and the current impracticability of specific performance of the terms of the [2010 stipulation]." (Footnote added.)

On the basis of the foregoing, the court ordered, inter alia: "The plaintiff shall pay to the defendant the sum of $125,000 as follows: $50,000 no later than April 1, 2023; $50,000 no later than June 30, 2023; and $25,000 no later than September 30, 2023. . . . This judgment shall be in full satisfaction of the terms in the initial 2004 [dissolution] judgment and the 2010 stipulation related to the properties in question."

The plaintiff thereafter filed a motion for reconsideration or reargument on the ground that his noncompliance with the 2010 stipulation was not wilful because compliance was impossible or impracticable "due to certain town of Granby regulations." The plaintiff further argued that the defendant did not have standing to assert any claim regarding the lot that was supposed to be transferred into a trust for the benefit of the parties' children, who had all reached the age of majority. On that basis, the plaintiff claimed that the court improperly compensated the defendant for two lots instead of one.[3] The court denied the plaintiff's motion

---

[3] The plaintiff stated: "With regard to this issue, the plaintiff is not requesting reconsideration and/or reargument with regard to the court's valuation of the lots, nor with the court's decision to order him to make the defendant whole via payment; instead, the plaintiff's contention is that but only for a misapprehension of the facts could the court have fashioned its order compensating the defendant for two lots when, pursuant to the 2010 [stipulation] and the court order approving such, the defendant only has an interest in one."

as to its finding of contempt but held an evidentiary hearing limited to the issue of whether the lot that was supposed to be transferred into a trust for the benefit of the parties' children "was properly made part of the court's award in its decision on the motion for contempt."

Following an evidentiary hearing on the plaintiff's motion for reconsideration, the court issued an order denying "the plaintiff's requested relief of removing the second lot from the court's December 30, 2022 order . . . ." The court recounted: "The plaintiff testified that his understanding of the language in the parties' underlying agreements was that a trust was to be established for the children for which he would be the trustee and that trust was to own one of the subdivision lots. From his perspective, the purpose of that trust was to fulfill his obligation to support the children in college. The plaintiff believes that he has met this obligation to his children, thus obviating the purpose of the trust. . . .

"No language in the parties' 2004 [dissolution judgment] or their subsequent 2010 stipulation specifically mentions an educational support order. The plaintiff argues that, although the underlying [dissolution judgment] and the [2010] stipulation may not be well drafted, it was the parties' intent that the second lot to be held in a trust was to pay for college. In fact, the plaintiff never established the trust. He testified that he spoke with counsel about it and realized it was a contractual obligation. However, he unilaterally decided not to establish the trust and to take care of his view of the trust's obligations in a different fashion. . . .

"The defendant's position is that the plaintiff had a legal obligation under both the 2004 [dissolution judgment] and the 2010 [stipulation] to convey two lots. In agreeing to the terms of those agreements, she factored in the lot that would be put in trust for the benefit of

the children. It was a bargained for point. Arguably, the defendant therefore forfeited some other potential financial benefit in securing that transfer for the benefit of the children. She contracted for that conveyance to occur, and it never has. Not only did the conveyance of the lot for the benefit of the children never occur, the underlying condition of the plaintiff setting up a trust never occurred. This court cannot look into the parties' states of mind when the agreement was initially made nineteen years ago and then reiterated thirteen years ago and analyze what they were thinking and intending. As the plaintiff's counsel said at the hearing, unfortunately, it is not a well drafted contract with respect to the issue at hand. However, the parties were both represented by counsel and reached the agreement as written. It would be inequitable for this court to now undermine the parties' agreement so many years ago to find that what was written was not really what they were thinking or what was meant. It would further be inequitable to deny one of the parties their bargained for rights under the agreements. Although the second lot in question was designated as being held in trust for the children, the children are not and have never been a party to the contract."

The court further stated that it "does not find that the plaintiff was attempting to shirk responsibility for funding his children's higher educations. However, the court cannot help but find that he failed to meet his contractual obligations of both setting up the trust for the children and conveying a lot to the trust for their benefit. The plaintiff has consistently treated the lot which was to be placed in trust for the benefit of his children as his own asset. His obligation to perform these two actions was something that the [defendant] bargained and gave consideration for, and which did not occur. Transferring the value of the lot that was to

be held in trust to the defendant enables her to distribute that value to the intended beneficiaries, if she sees that as appropriate." This appeal followed.

I

The plaintiff first claims that the defendant lacked standing to assert a claim related to the order requiring the transfer of a lot into a trust for the benefit of the parties' children. We agree.

"Standing . . . is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . The general rule is that one party has no standing to raise another's rights. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . [Standing is] ordinarily held to have been met when a complainant makes a colorable claim of direct injury he . . . is likely to suffer . . . ." (Citation omitted; internal quotation marks omitted.) *Freccia* v. *Freccia*, 232 Conn. App. 353, 368–69, A.3d , cert. denied, 352 Conn. 957, A.3d (2025), and cert. granted, 352 Conn. 957, A.3d (2025), and cert. denied, 352 Conn. 958, A.3d (2025). "The [movant] bears

the burden of proving subject matter jurisdiction, whenever and however raised." (Internal quotation marks omitted.) *Emerick* v. *Glastonbury*, 145 Conn. App. 122, 128, 74 A.3d 512 (2013), cert. denied, 311 Conn. 901, 83 A.3d 348 (2014).

The defendant contends that she has standing to pursue a claim to the lot that was supposed to be transferred into a trust for the benefit of the parties' children because she was a party to the separation agreement, which provided for the transfer, and that she gave up any interest in the plaintiff's businesses in consideration for the transfer of the two lots. This court considered a similar situation in *Hamburg* v. *Hamburg*, 182 Conn. App. 332, 193 A.3d 51, cert. denied, 330 Conn. 916, 193 A.3d 1211 (2018). In *Hamburg*, the parties had entered into a separation agreement, which was incorporated into the judgment of dissolution, that provided that their children were to be the beneficiaries of certain financial accounts intended to fund their private school and college educations.[4] Id., 335. The defendant father withdrew funds from those accounts for his own use and failed to repay them. Id., 336. The defendant's failure to repay those funds resulted in various findings of contempt and orders providing for repayment. Id., 336–40. In 2015, the substitute plaintiff, the temporary administrator of the estate of the plaintiff, filed an application for order to show cause why an order should not enter that the defendant, inter alia, commence making payments on the debt owed to the children resulting from the defendant's failure to repay the funds that he had withdrawn from the children's education funds. Id., 340. The defendant filed a motion to dismiss the

---

[4] Specifically, "the [plaintiff] and the defendant agreed that each of them 'shall maintain any and all custodial accounts held in his or her individual name for the benefit of the children. Said accounts shall be used only for the educational expenses of the children . . . .' " *Hamburg* v. *Hamburg*, supra, 182 Conn. App. 335 n.1.

substitute plaintiff's application for order to show cause, arguing that the substitute plaintiff was neither classically nor statutorily aggrieved by the debt he owes the children, and, therefore, that he lacked standing to pursue any claim related to it. Id., 340–41. The trial court denied the motion to dismiss, and the defendant appealed, claiming, inter alia, that the trial court "erroneously concluded that the substitute plaintiff has standing to prosecute an action for repayment of the funds he took from the children's education accounts." Id., 345.

This court agreed with the defendant, reasoning that "[t]he substitute plaintiff has not directed us to any evidence presented at the time the court ruled on the motion to dismiss that would demonstrate a personal and direct interest in the moneys the defendant owes the children, and our review of the record did not disclose any such evidence. The substitute plaintiff also does not claim that he has a fiduciary relationship with the children. . . . More importantly, however, the court made no factual finding that the substitute plaintiff has a direct and personal interest in those moneys or the right to collect the funds on behalf of the children, unlike a direct interest in the money the defendant owed the [plaintiff]. The substitute plaintiff, therefore, failed to carry his burden to demonstrate standing with respect to the moneys the defendant owes his children."[5] Id., 349–50.

---

[5] We note that this court also affirmed the judgment of the court granting the motion to intervene filed by one of the children. The court held that "[t]he substitute plaintiff has no fiduciary relationship with the children and, therefore, cannot adequately represent them. Because [the parties' daughter] has a direct and personal interest in having the defendant reimburse the education funds, she has carried her burden and the court properly granted her motion to intervene." *Hamburg* v. *Hamburg*, supra, 182 Conn. App. 352. The court held that "[n]o other party has standing to pursue repayment from the defendant of the funds he took from the accounts for his own use." Id.

As in *Hamburg*, the defendant here has not demonstrated a direct or personal interest in the lot that was ordered to be transferred into a trust for the benefit of the parties' children.[6] Although the defendant may have been the party who entered into the agreement that provided for the transfer of that lot, she has not demonstrated, or even claimed, a direct injury that she has suffered as a result of the plaintiff's failure to transfer it. We therefore conclude that the defendant lacked standing to assert the claim as to the lot that was supposed to be transferred into a trust for the benefit of the parties' children. Accordingly, the judgment of contempt related to that lot and the associated award of damages must be vacated.

## II

The plaintiff next claims that the court erred in finding him in contempt because his failure to transfer the lots was not wilful.[7]

"To constitute contempt, it is not enough that a party has merely violated a court order; the violation must be wilful. . . . It is the burden of the party seeking an order of contempt to prove, by clear and convincing evidence, both a clear and unambiguous directive to the alleged contemnor and the alleged contemnor's wilful noncompliance with that directive." (Internal quotation

---

[6] The plaintiff also argues that any claim related to the lot that was to be transferred to the children is moot because the trust was intended to finance the children's college educations and he paid for their education by other means. Because we conclude that the defendant did not have standing to assert the claim as to the lot that was to be transferred into a trust for the benefit of the parties' children, we need not address the plaintiff's mootness claim.

[7] The plaintiff also claims that the dissolution judgment was ambiguous. This claim was not raised before the trial court and therefore is not preserved for our review. Even if we were to review and agree with the plaintiff's claim that the 2004 dissolution judgment was ambiguous, he has failed to claim any ambiguity as to the 2010 stipulation, which also required him to transfer the lots at issue.

marks omitted.) *Jacob-Dick* v. *Dick*, 231 Conn. App. 404, 411, 333 A.3d 210 (2025). "Whether a party's violation was wilful depends on the circumstances of the particular case and, ultimately, is a factual question committed to the sound discretion of the trial court." (Internal quotation marks omitted.) *Hall* v. *Hall*, 335 Conn. 377, 392, 238 A.3d 687 (2020). We review the factual findings that underlie a court's contempt determination pursuant to the clearly erroneous standard. See *Talbot* v. *Talbot*, 148 Conn. App. 279, 289, 85 A.3d 40, cert. denied, 311 Conn. 954, 97 A.3d 984 (2014).

The resolution of the plaintiff's claim requires us to examine the evidentiary basis for the court's finding of wilfulness. We are, however, unable to do so because the plaintiff has failed to provide to this court the transcript of the contempt hearing.[8] Practice Book § 61-10 (a) provides: "It is the responsibility of the appellant to provide an adequate record for review. The appellant shall determine whether the entire record is complete, correct and otherwise perfected for presentation on appeal." It is well settled that "[t]he absence of such a record is an insurmountable obstacle to review of the claims of error in the circumstances of this case." (Internal quotation marks omitted.) *Manzi* v. *Manzi*, 134 Conn. App. 333, 336, 38 A.3d 1247 (2012). "The general purpose of [the relevant] rules of practice . . . [requiring the appellant to provide a sufficient record] is to ensure that there is a trial court record that is adequate for an informed appellate review of the various claims presented by the parties. . . . This court also has explained that [a]n appellate tribunal cannot render a

---

[8] The plaintiff provided only the transcript of the June 7, 2023 hearing on his motion for reconsideration. As noted herein, that hearing concerned only whether the lot that was supposed to have been transferred to a trust for the children should have been included in the court's earlier decision on the defendant's motion for contempt. The defendant provided in the appendix to her brief a portion of the transcript of the contempt hearing, but not the transcript of the entire hearing.

decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record . . . . Without the necessary factual and legal conclusions . . . any decision made by us respecting [the claims raised on appeal] would be entirely speculative." (Citation omitted; internal quotation marks omitted.) *R & P Realty Co.* v. *Peerless Indemnity Ins. Co.*, 193 Conn. App. 374, 379, 219 A.3d 429 (2019).

Without the transcript of the contempt hearing, we cannot review the entirety of the evidentiary record upon which the court based its finding of wilfulness. We therefore decline to review the plaintiff's challenge to the court's contempt determination.

III

The plaintiff next claims that the court's monetary award to the defendant constituted an impermissible modification of a property settlement. We disagree.

It is well settled that "[t]he court's authority to transfer property appurtenant to a dissolution proceeding rests on [General Statutes] § 46b-81. . . . Accordingly, the court's authority to divide the personal property of the parties, pursuant to § 46b-81, must be exercised, if at all, at the time that it renders judgment dissolving the marriage. . . . A court, therefore, does not have the authority to modify the division of property once the dissolution becomes final. . . .

"Although the court does not have the authority to modify a property assignment, a court, after distributing property, which includes assigning the debts and liabilities of the parties, does have the authority to issue postjudgment orders effectuating its judgment. . . . [I]t is . . . within the equitable powers of the trial court to fashion whatever orders [are] required to protect the

integrity of [its original] judgment. . . . This court has explained the difference between postjudgment orders that modify a judgment rather than effectuate it. A modification is [a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact. . . . In contrast, an order effectuating an existing judgment allows the court to protect the integrity of its original ruling by ensuring the parties' timely compliance therewith. . . .

"If a party's motion can fairly be construed as seeking an effectuation of the judgment rather than a modification of the terms of the property settlement, this court must favor that interpretation. . . . Similarly, when determining whether the new order is a modification, we examine the practical effect of the ruling on the original order. . . . In order to determine the practical effect of the court's order on the original judgment, we must examine the terms of the original judgment as well as the subsequent order. [T]he construction of [an order or] judgment is a question of law for the court . . . [and] our review . . . is plenary. As a general rule, [orders and] judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the [order or] judgment. . . . The interpretation of [an order or] judgment may involve the circumstances surrounding [its] making. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The [order or] judgment should admit of a consistent construction as a whole. . . .

"Relatedly, [f]aced with a party in contempt of court, it is within the court's province to fashion appropriate remedial orders. Courts have in general the power to fashion a remedy appropriate to the vindication of a

prior . . . judgment. . . . Having found noncompliance, the court, in the exercise of its equitable powers, necessarily ha[s] the authority to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Citation omitted; internal quotation marks omitted.) *Walzer* v. *Walzer*, 209 Conn. App. 604, 615–16, 268 A.3d 1187, cert. denied, 342 Conn. 907, 270 A.3d 693 (2022).

"It is well established that, [i]n a contempt proceeding . . . a trial court has broad discretion to make whole a party who has suffered as a result of another party's failure to comply with the court order." (Internal quotation marks omitted.) *Scott* v. *Scott*, 215 Conn. App. 24, 50–51, 282 A.3d 470 (2022).

Here, the court's monetary award to the defendant was not in response to a motion that sought modification of the court's orders, but, rather, a motion for contempt that sought to effectuate those orders by transfer of the lots at issue. As the court noted in its decision, it could not effectuate its prior orders or make the defendant whole by ordering the transfer of the lots because,[9] due to the plaintiff's delay in complying with those orders, the subdivision approval had expired, and the individual lots no longer existed as subdivided lots. The monetary award was necessary to vindicate the court's prior orders. We therefore reject the plaintiff's claim that it constituted an impermissible modification of the parties' property settlement.

IV

The plaintiff finally claims that the court's award of $25,000 to the defendant for lost financial opportunities resulting from the plaintiff's failure to transfer the lots was not supported by the evidence.

---

[9] Indeed, as noted in footnote 3 of this opinion, the plaintiff expressly indicated that he was not asking the court to reconsider its decision "to make the defendant whole via payment . . . ."

It is axiomatic that "[d]amages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." (Internal quotation marks omitted.) *Argentinis* v. *Fortuna*, 134 Conn. App. 538, 548, 39 A.3d 1207 (2012). Therefore, the plaintiff's claim challenging the evidentiary basis for the court's award requires us to review the evidence that was before the court. As noted herein, however, the plaintiff has failed to provide us with the entire trial court record, without which we would be left to speculate as to the basis of the court's award. We decline to do so.[10]

The judgment is vacated as to the finding of contempt related to the subdivision lot that was ordered to be transferred into a trust for the benefit of the parties' children and as to the award of damages to the defendant with respect to that lot; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

––––––––––––––––––––

[10] At oral argument before this court, counsel for the plaintiff also argued that the court's award of damages for the loss of financial opportunities was improper because the defendant did not allege such a loss in her motion for contempt. Because the plaintiff did not brief this claim, it is not properly before us.