BONNIE MANTER *v.* JOHN MANTER

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued October 15—decision released December 1, 1981

*Donald J. Cantor,* with whom were *Edward J. Hyman* and, on the brief, *Joel M. Ellis,* for the appellant (intervenor Allan D. Coombs).

*Robert J. Cathcart,* with whom was *Mary M. Ackerly,* for the appellee (plaintiff).

PETERS, J. The issue in this case is whether a divorced adoptive father who has permitted his former wife's second husband to adopt his children may, more than a year following the latter's divorce, intervene to regain custody of the children. The appellant's motion to intervene was denied by the trial court, and he appeals from that denial.

Prospective third party intervenor Allan Dexter Coombs married Brenda Mae Coombs in March,

1961. The couple then adopted two minor children, Donald Allan and Heather Eleanor. After the Coombs' divorce in July, 1974, Brenda Coombs married John P. Manter in February, 1975, using thereafter the name of Bonnie Manter. Because of the Manter marriage, Allan Coombs consented to the termination of his parental rights and the adoption of Donald and Heather by John Manter; the termination and adoption agreements were ordered by Probate Court decree on September 9, 1975.[1] After two years of marriage Bonnie and John Manter were divorced on January 18, 1978, with Bonnie Manter retaining custody of both children. The divorce decree was modified on April 6, 1978, to deny John Manter visitation rights. To date he has not challenged that denial or the custody decision.

Seeking custody or visitation rights,[2] Allan Coombs moved on February 13, 1979, to intervene in the divorce action of *Manter* v. *Manter* under General Statutes § 46b-57, which permits interested third parties to intervene in custody controversies before the Superior Court.[3] At a preliminary hear-

---

[1] In his motion to intervene, Coombs claimed that he acted under duress when he agreed to terminate his parental rights. Since he had, however, never attempted to set that termination aside, he conceded at oral argument that the duress issue was presently irrelevant.

[2] Coombs based his motion on claims that he had maintained a continuous relationship with the children both before and after their adoption and had contributed substantially to their support at all times.

[3] "[General Statutes] Sec. 46b-57. (Formerly Sec. 46–47). THIRD PARTY INTERVENTION RE CUSTODY OF MINOR CHILDREN. PREFERENCE OF CHILD. In any controversy before the superior court as to the custody of minor children, and on any complaint under this chapter or section 46b-1 or 54–27, if there is any minor child of either or both parties, the court if it has jurisdiction under the provisions of chapter 815o, may allow any interested third party or parties to intervene upon motion. The court may award full or partial custody, care, education

ing the trial court on April 2 granted Coombs standing for the expressly limited purpose of a visitation study by the family relations office. By supplemental order dated October 1, 1979, the court denied the motion to intervene on the dual grounds that no present dispute was then before the court and no facts were presented to qualify Coombs as an interested party under § 46b-57. Coombs now appeals from that denial of his motion to intervene.

General Statutes § 46b-57 assigns the court discretionary power to permit intervention upon motion by "any interested third party or parties." A prerequisite to that intervention, however, is the existence of a controversy. Although the prospective intervenor argues that Bonnie Manter's opposition to his motion itself generates the necessary controversy, the statute does not support that reading. Section 46b-57 permits intervention "[i]n any controversy before the superior court as to the custody of minor children, and on any complaint under this chapter or section 46b-1 or 54-27."[4] Read in

and visitation rights of such child to any such third party upon such conditions and limitations as it deems equitable. Before allowing any intervention, the court may appoint counsel for the child or children pursuant to the provisions of section 46b-54. In making any order under this section the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference."

[4] "[General Statutes] Sec. 46b-1. (Formerly Sec. 51-330). FAMILY RELATIONS MATTERS DEFINED. Matters within the jurisdiction of the superior court deemed to be family relations matters shall be matters affecting or involving: (1) Dissolution of marriage, contested and uncontested, except dissolution upon conviction of crime as provided in section 46b-47; (2) legal separation; (3) annulment of marriage; (4) alimony, support, custody and change of name incident to dissolution of marriage, legal separation and annulment; (5) actions brought under section 46b-38; (6) complaints for change of name; (7) civil support obligations; (8) habeas corpus and other proceedings to determine the custody and visitation of children; (9) habeas

accordance with customary usage, this language clearly requires the controversy to precede the motion and to exist independently of it. Intervention is "a device which enables one who was not originally a party to an action to become such a party on his own initiative." James & Hazard, Civil Procedure (2d Ed.) § 10.19, p. 511. The intervenor's posture is derivative; he assumes his role only by virtue of an action already shaped by the original parties. He must, therefore, take his controversy as he finds it and may not use his own claims to restyle or resuscitate their action. See *National Bank of Commerce of New London* v. *Howland,* 128 Conn. 307, 312–13, 22 A.2d 773 (1941).

corpus brought by or in behalf of any mentally ill person except a person charged with a criminal offense; (10) appointment of a commission to inquire whether a person is wrongfully confined as provided by section 17-200; (11) juvenile matters as provided in section 46b-121; (12) all rights and remedies provided for in chapter 815j; (13) the establishing of paternity; (14) appeals from probate concerning: (a) Adoption or termination of parental rights; (b) appointment and removal of guardians; (c) custody of a minor child; (d) appointment and removal of conservators; (e) orders for custody of any child; (f) orders of commitment of persons to public and private institutions and to other appropriate facilities as provided by statute; (15) actions related to prenuptial and separation agreements and to matrimonial decrees of a foreign jurisdiction; (16) custody proceeding brought under the provisions of chapter 815o; and (17) all such other matters within the jurisdiction of the superior court concerning children or family relations as may be determined by the judges of said court."

"[General Statutes] Sec. 51-348a. (Formerly Sec 54-27). PROSECUTION FOR NONSUPPORT IN GEOGRAPHICAL AREA. Notwithstanding the issuance of an order for support of a minor child or children by the superior court under the provisions of section 46b-84, any prosecution for nonsupport of a minor child or children as specified in section 53-304 may be brought to the geographical area of the superior court and shall proceed on proper complaint from the payee of such order, a family relations officer or an authorized representative of the commissioner of administrative services; provided, in any case where such order has been issued, such order shall be the measure of failure to support."

The controversy in which Coombs seeks to intervene is the divorce of Bonnie and John Manter. Their divorce decree was issued on January 18, 1978 and modified on April 6, 1978, when John Manter was denied visitation rights. Coombs' motion to intervene was filed on February 13, 1979, thirteen months after the divorce decree and ten months after the modification. We need not now determine the precise moment at which the controversy surrounding a divorce decree expires. In the circumstances of this case, the trial court could reasonably have concluded that no controversy existed when Coombs attempted to intervene. Where a statute provides that a court "may allow" intervention under specified conditions, that court exercises discretion in determining the timeliness of the intervention. See *Lettieri* v. *American Savings Bank,* 182 Conn. 1, 13, 437 A.2d 822 (1980); *Jones* v. *Ricker,* 172 Conn. 572, 575 n.3, 375 A.2d 1034 (1977); 37 A.L.R.2d 1306 (1954); cf. James & Hazard, supra, 516. There was no abuse of that discretion here.

Since we agree that Coombs' motion was barred by the absence of a controversy, we should not in this case attempt to define the varieties of interest that would authorize intervention under § 46b-57. We do, however, observe that under its mandate to give "paramount consideration in custody matters" to the child's welfare; *Simons* v. *Simons,* 172 Conn. 341, 347, 374 A.2d 1040 (1977); the court may employ a flexible test of interest in harmony with the broad language of the statute. See *Presutti* v. *Presutti,* 181 Conn. 622, 626–27, 436 A.2d 299 (1980).[5]

---

[5] General Statutes § 46b-57 was introduced as a minor part of the controversial 1973 reformation of Connecticut divorce law and received little scrutiny at the time. See H.B. 8235, § 17. In hearings before the Judiciary Committee, Samuel Schoonmaker, Chairman of

The traditional family model, never itself strictly limited to the nuclear unit, is today one among numerous variations on the extended family. See *Moore v. East Cleveland,* 431 U.S. 494, 504–506, 97 S. Ct. 1932, 52 L. Ed. 2d 531 (1977); Zaharoff, "Access to Children: Towards a Model Statute for Third Parties," 15 Fam. L.Q. 165, 185–89 (1981). Courts in other jurisdictions have responded by granting visitation rights to such nontraditional parties as stepparents where the child's welfare dictated that result. See, e.g., *Looper v. McManus,* 581 P.2d 487, 489 (Okla. Ct. App. 1978); *Spells v. Spells,* 250 Pa. Super. 168, 172, 378 A.2d 879 (1977); 1 A.L.R.4th 1270 (1980). Our decision today is in no way intended to prejudge future interpretations of the phrase "interested third party" under § 46b-57 where the controversy requirement is met and the trial court finds a prospective intervenor to have a significant concern for the welfare of the child. See Zaharoff, supra, 194–96.

---

the Family Law Committee of the Connecticut Bar Association and one of the drafters of the statute, testified that "[w]e also provide that in the case that neither party is in a position or fit to take charge of children parties who might be in a better position be permitted to come to court to have their case heard and if appropriate the judge could award custody and visitation rights to others such as grandparents, uncles and aunts and other people of that kind." Joint Standing Committee Hearings, Judiciary, Pt. 1, 1973 Sess., p. 209. There is no testimony further explaining the standards for intervention or defining "other people of that kind." See also McAnerney & Schoonmaker, "Connecticut's New Approach to Marriage Dissolution," 47 Conn. B.J. 375, 405–406 (1973): "The power of the court to award custody or visitation rights to third parties may, as a practical matter, be rarely used, but its existence underscores the philosophy that the court should go to whatever length it deems necessary to promote a child's welfare . . . ."

There is no error.

In this opinion SPEZIALE, C.J., HEALEY and ARMEN-TANO, Js., concurred.

PARSKEY, J. (concurring). Although I am pre-pared in a proper case to consider whether the language of General Statutes § 46b-57 is broad enough to encompass other than legal interests for the purpose of intervention in custody proceedings, I do not regard this case as appropriate for such consideration. While it is true that the third party "intervenor" had been an adoptive parent, the rec-ord discloses that he consented to the termination of his parental rights. His present claim that such consent was given under duress is not properly raised in a motion to intervene. The proper way to raise such claims is by filing, in a timely fashion, a motion to reopen and vacate the termination judg-ment. Failing that, the third party "intervenor" must be treated in the present case as a legal stranger.

Because the "intervenor," nevertheless, presses a claim for intervention based on a broad view of "interest," additional observations are suggested. What appears on the surface as simply a problem of statutory construction on closer analysis involves more complex issues. To start with, assuming the existence of a present controversy, the immediate litigants are parents, each of whom possesses a con-stitutional right. The right of a parent to the com-panionship, care, custody and management of his or her children is not a mere lagniappe that comes with the relationship. Rather it is an essential constitu-tional right which warrants deference and, in the absence of a powerful countervailing interest, pro-

tection. *Stanley* v. *Illinois,* 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972). The corollary to this proposition is that in any controversy between a possessor of a constitutionally protected custodial right and a possessor of a lesser interest, ordinarily the latter must give way.[1] See *Smith* v. *Organization of Foster Families for Equality and Reform,* 431 U.S. 816, 847, 97 S. Ct. 2094, 53 L. Ed. 2d 14 (1977); *Hao Thi Popp* v. *Lucas,* 182 Conn. 545, 551, 438 A.2d 755 (1980). Because I do not read the court's opinion as standing for the proposition that the flexible interest test for intervention would give the trial court discretion, under the rubric of "the best interests of the child," to override a person's constitutional parental rights in favor of such intervening party I concur both in the opinion and the result. See *In re Juvenile Appeal (Anonymous),* 181 Conn. 638, 648, 436 A.2d 290 (1980) (*Parskey, J.,* dissenting).

---

[1] To what extent, if any, parental rights might be attenuated in a case in which a grandparent seeks visitation rights pursuant to General Statutes § 46b-59 need not be addressed at this time.