******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# CHRISTINE PASCIOLLA *v.* JAMES PASCIOLLA
## (AC 46576)

Moll, Clark and Lavine, Js.

*Syllabus*

The intervenor appealed from the trial court's judgment granting the plaintiff's motion to dismiss her postjudgment motion to modify a lifetime alimony award for lack of subject matter jurisdiction. The intervenor claimed that the court improperly concluded that, as executrix of the defendant's estate, she lacked standing. *Held*:

The trial court improperly concluded that the intervenor lacked standing to seek modification of the alimony award because the potential harm to the defendant's estate, namely, the depletion of its assets, was direct and, as the sole legal representative of the estate, the intervenor was the only individual who could properly move to modify the alimony award on its behalf.

Argued November 12, 2024—officially released January 14, 2025

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Dunnell, J.*, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' settlement agreement; thereafter, the court, *Tindill, J.*, granted the motion to intervene filed by Carollyn Mainolfi Pasciolla, as executrix of the estate of the defendant; subsequently, the intervenor filed a postjudgment motion to modify alimony; thereafter, the court, *Price-Boreland, J.*, granted the plaintiff's motion to dismiss, from which the intervenor appealed to this court. *Reversed*; *further proceedings*.

*John-Henry M. Steele*, with whom was *Laurel A. Ellson*, for the appellant (intervenor).

*Anthony Alan Sheffy*, for the appellee (plaintiff).

*Opinion*

MOLL, J. In this postdissolution matter, Carollyn Mainolfi Pasciolla—the executrix of the estate of the defendant, James Pasciolla, and an intervenor in the underlying dissolution action (executrix)—appeals from the judgment of the trial court dismissing, for lack of standing, her second amended postjudgment motion to modify the lifetime alimony award awarded to the plaintiff, Christine Pasciolla. On appeal, the executrix contends that the court incorrectly concluded that she lacked standing to seek a postjudgment modification of alimony. We agree and, accordingly, reverse the judgment of the trial court.

The following facts, as found by the trial court or as are undisputed in the record, and procedural history are relevant to our resolution of this appeal. The plaintiff and the defendant were married on January 25, 1981. On March 24, 1998, the plaintiff commenced the present action seeking a dissolution of the marriage on the ground that the marriage had broken down irretrievably. On November 6, 1998, the court, *Dunnell, J.*, issued a memorandum of decision rendering a judgment of dissolution and incorporating into the judgment a separation agreement executed by the plaintiff and the defendant.[1] Section 9 of the parties' separation agreement provides in relevant part: "The defendant . . . shall pay to the plaintiff . . . the sum of . . . $700 . . . per week as alimony for the duration of the plaintiff's life. Said [a]limony shall terminate only upon the occurrence of one of the following events: a) the plaintiff's remarriage; b) the plaintiff's cohabitation as

_____

[1] On October 21, 1999, the court, *A. Robinson, J.*, modified the provisions of the separation agreement concerning child custody. On February 10, 2000, March 24, 2000, and January 4, 2001, the court, *Levine, J.*, modified the provisions of the separation agreement concerning the division of the parties' financial assets. Such modifications have no bearing on the present appeal.

defined by [s]tatute; or c) the plaintiff's death."[2] The plaintiff's original award of $700 per week in alimony was later modified to $540 per week, and once more to $300 per week (alimony award).[3]

On August 29, 2019, the defendant died. Shortly thereafter, the plaintiff filed a claim in Probate Court against the defendant's estate seeking enforcement of the alimony award. On November 4, 2019, while the plaintiff's claim before the Probate Court was pending, the executrix filed in the dissolution action a motion to open and intervene, as executrix for the defendant's estate (motion to intervene). The same day, the executrix filed a postjudgment motion for termination and/or modification of alimony (2019 motion to modify), in which she argued that (1) pursuant to § 16 of the separation agreement,[4] the plaintiff relinquished her right to claim alimony from the defendant's estate, and (2) there is no stream of income to the estate with which to pay any alimony to the plaintiff. As relief, the executrix sought

___

[2] Section 9 of the separation agreement also contains, immediately following the cohabitation clause, handwritten language, which is only partially legible and which states in part: "for purposes of caregiving if additional income . . . ." The handwritten portion of § 9, however, is not relevant to the present appeal.

[3] On March 26, 2013, the defendant filed a third postjudgment motion to modify alimony, seeking to reduce the alimony to $100 per week on the basis of a substantial change in circumstances, which the court, *Maureen M. Murphy, J.*, denied on October 7, 2013.

[4] Section 16 of the separation agreement provides: "Except as here and otherwise provided, each party may dispose of his or her property in any way and each party hereby waives and relinquishes any and all right he or she may have or hereafter acquire, under the present and future laws of any jurisdiction to share in the property or the estate of the other as a result of their marital relationship, including, without limitation, dower, curtsey, statutory allowance, widow's allowance, homestead rights, right to take an intestacy, right to take against the will of the other and right to act as administrator or executor of the other's estate and each party will, at the request of the other, execute, acknowledge and deliver any and all instruments which may be necessary or advisable to carry into effect this mutual waiver and relinquishment of all such interests, rights and claims."

termination of the alimony award. On October 15, 2020, without objection, the court, *Tindill, J.*, granted the executrix' motion to intervene.

On December 15, 2020, the court, *Tindill, J.*, with the 2019 motion to modify still pending before it, heard argument from the executrix and the plaintiff regarding "the [threshold] issue of whether the plaintiff can bring a claim against the defendant's estate for continued alimony . . . ."[5] The plaintiff argued that the separation agreement clearly and unambiguously expressed an intent that alimony would be paid to her for the duration of her life and, therefore, the lifetime alimony provision should be enforced against the defendant's estate. The executrix argued that § 23 of the separation agreement[6] constituted a waiver by the plaintiff and the defendant of any claims against each other's estate, and, therefore, the plaintiff could not make a claim against the defendant's estate based on the alimony award. The executrix also argued that the plaintiff's claim against the estate for alimony could not be enforced because there was no "clear and unequivocal [language] that alimony should continue after the death of the [defendant] . . . ."

Quoting from the separation agreement, the court concluded that § 9 "is crystal clear. . . . The defendant . . . shall pay to the plaintiff . . . the sum of $700 per week as alimony [later reduced to $300 per week] for the duration of the plaintiff's life, period. . . . I don't know what could have made that more clear. Said alimony shall terminate only upon the occurrence of one of the following events: [1] [the plaintiff's] remarriage,

---

[5] The plaintiff and the executrix also filed memoranda of law in support of their positions regarding the 2019 motion to modify prior to the December 15, 2020 hearing.

[6] Section 23 of the separation agreement provides: "Except as otherwise stated herein, all the provisions of this agreement shall be binding upon their respective heirs, next of kin, or executors and administrators of the parties."

there's no dispute she hasn't remarried; [2] her cohabitation as defined by statute, I haven't heard any argument that she's cohabitating, and then there is some handwritten language . . . I'm not sure what [the handwritten language] says, but I don't think that's dispositive here . . . or [3] the plaintiff's death. None of those things have happened. That's also undisputed." In response to the executrix' argument that the parties waived any claims against each other's estates in § 23 of the separation agreement, the court further noted that the agreement also stated in § 16 that such claims are waived "except as here and otherwise provided; I think the otherwise provided [language] is . . . where your argument fails, it's otherwise provided in § 9, that the plaintiff is paid alimony . . . for the duration of her life or one of [the three delineated] occurrences." The executrix did not appeal from the court's ruling that the alimony award was binding on the defendant's estate,[7] and the executrix does not challenge the validity of the lifetime alimony provision in the present appeal.

On January 29, 2021, the executrix filed an amended postjudgment motion to modify and/or terminate alimony. On February 26, 2021, the plaintiff filed an objection. On July 14, 2022, the executrix filed a second amended postjudgment motion to modify alimony

---

[7] See *Dombrowski* v. *Noyes-Dombrowski*, 273 Conn. 127, 135–36, 869 A.2d 164 (2005) ("The general rule is that, absent contrary language, the death of the obligor spouse terminates the obligation to pay periodic alimony . . . and the nature of alimony as spousal support means that it ends upon the death of the obligee spouse. There is no Connecticut statute addressing this issue, and we are unaware of any case in which this court has ever held that alimony orders, which do not explicitly address the contingency of death, survive the death of either party. . . . By contrast, we *have* given effect to alimony orders with specific directives. See *McDonnell* v. *McDonnell*, 166 Conn. 146, 150–51, 348 A.2d 575 (1974) (concluding that husband's estate was obligated to continue making alimony payments only because decree 'clearly and unequivocally' imposed such obligation upon husband and his ' "heirs, executors and representatives" ')." (Citations omitted; emphasis in original; footnote omitted.)).

(operative motion to modify) on the basis that (1) "there is nothing in the defendant's estate to provide any alimony payment to the plaintiff," (2) pursuant to § 16 of the separation agreement, the plaintiff waived any claim against the defendant's estate, and/or (3) prior to and since the death of the defendant, the plaintiff has been cohabitating, such that the alimony obligation terminated pursuant to § 9 of the separation agreement. As relief, the executrix sought "to terminate and/or substantially reduce" the alimony award. On November 4, 2022, the plaintiff filed a motion to dismiss the executrix' operative motion to modify for lack of subject matter jurisdiction. On December 9, 2022, the executrix filed an objection to the plaintiff's motion to dismiss, to which the plaintiff replied on December 23, 2022.

On May 23, 2023, the court, *Price-Boreland, J.*, heard argument regarding the plaintiff's motion to dismiss. The plaintiff argued that, although the court, *Tindill, J.*, had jurisdiction when it ruled in December, 2020, that the plaintiff had a valid claim against the defendant's estate based on the lifetime alimony provision, the court, *Price-Boreland, J.*, was without jurisdiction to hear the executrix' operative motion to modify because a dissolution action is personal and terminates upon the death of one of the parties. The executrix argued that, notwithstanding Judge Tindill's December, 2020 ruling, the court still had jurisdiction to consider the operative motion to modify because the motion cited other reasons to support the termination or modification of alimony, such as cohabitation and/or a change in the financial circumstances of the plaintiff and the defendant. The executrix also cited *Ferraiolo* v. *Ferraiolo*, 157 Conn. App. 350, 116 A.3d 366 (2015), for the proposition that "a court does not truly lack subject matter jurisdiction if it has confidence to entertain the action before it," and, therefore, because the

court concluded that the alimony award was enforce-
able against the defendant's estate, the court must also
have continuing jurisdiction to modify such award.

The court concluded that it "had jurisdiction to deter-
mine the preliminary issue of whether the plaintiff was
entitled to bring a claim of lifetime alimony for her life
and to permit the executrix a chance to object. Under
a permissive grant to intervene by the executrix, the
court had jurisdiction between the plaintiff and the
executrix to determine if the separation agreement
expressed an intent for lifetime alimony for the life of
the plaintiff, as that issue was pending before the court,
the court had not rendered a determination on it prior,
and it did not involve opening and modifying the dissolu-
tion decree. Rather, that issue involved interpretation of
the language of the agreement to determine the present
rights and obligations between the parties.

"[The] court is without jurisdiction, however, to hear
the executrix' postjudgment [operative] motion [to
modify] . . . as the executrix is a stranger to the
action.

"Although the executrix is a fiduciary to the defen-
dant's estate, she does not have a direct claim or interest
in the dissolution decree. She may have an indirect
interest as the order to pay alimony may impact the
estate, but the executrix has not asserted any right or
interest she may have in the dissolution decree in her
original motion to intervene . . . nor in her current
objection to the motion to dismiss . . . ."[8] (Citations

---

[8] In support of its order granting the plaintiff's motion to dismiss, the
court also relied on General Statutes § 52-107, which provides: "The court
may determine the controversy as between the parties before it, if it can do
so without prejudice to the rights of others; but, if a complete determination
cannot be had without the presence of other parties, the court may direct
that such other parties be brought in. If a person not a party has an interest
or title which the judgment will affect, the court, on his application, shall
direct him to be made a party."

The court concluded that § 52-107 did not lend the executrix any support
because, in the court's view, the statute does not apply postjudgment. The

omitted.) Thus, the court granted the plaintiff's motion to dismiss for lack of subject matter jurisdiction. This appeal followed.

We begin by setting forth the applicable standard of review and legal principles that are relevant to our resolution of the executrix' claim. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [When] a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time. . . .

"Because lack of standing implicates the trial court's subject matter jurisdiction, it is properly raised by way of a motion to dismiss. . . . Our standard of review of a trial court's findings of fact and conclusions of law in connection with a motion to dismiss is well-settled. A finding of fact will not be disturbed unless it is clearly erroneous. . . . [If] the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts . . . . Thus, our review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo. . . .

"A motion to dismiss [for lack of standing] . . . properly attacks the jurisdiction of the court, essentially

executrix does not assert, however, that § 52-107 affords her standing and, accordingly, we do not address the merits of the court's conclusion regarding § 52-107.

asserting that the [complaining party] cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . .

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Citation omitted; internal quotation marks omitted.) *Hamburg* v. *Hamburg*, 182 Conn. App. 332, 344–45, 193 A.3d 51, cert. denied, 330 Conn. 916, 193 A.3d 1211 (2018).

Importantly, "[o]ur standing jurisprudence consistently has embodied the notion that there must be a colorable claim of a direct injury to the [complaining party], in an individual or representative capacity. . . . The requirement of directness between the injuries claimed by the [complaining party] and the conduct of the [opposing party] also is expressed, in our standing jurisprudence, by the focus on whether the [complaining party] is the proper party to assert the claim at issue. In order for a [complaining party] to have standing, it must be a proper party to request adjudication of the issues. . . . Standing focuses on whether a party is the proper party to request adjudication of the issues, rather than on the substantive rights of the aggrieved parties. . . . [I]f the injuries claimed by the [complaining party] are remote, indirect or derivative with respect to the [opposing party's] conduct, the [complaining party] is not the proper party to assert them and lacks standing to do so. Where, for example, the harms asserted to have been suffered directly by a [complaining party] are in reality derivative of injuries to a third party,

the injuries are not direct but are indirect, and the [complaining party] has no standing to assert them. . . . The task of the court in a case such as this is to determine whether the facts, as stated in the complaint and taken as true, demonstrate that the injuries, on one hand, are direct or, on the other hand, are indirect, remote or derivative." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 346–48, 780 A.2d 98 (2001).

With these legal principles in mind, we turn to the merits of the executrix' claim on appeal. The executrix argues that the court improperly concluded that she lacked standing to move to modify postjudgment the plaintiff's alimony award. In connection with this claim, the executrix asserts that she has a direct interest in the dissolution decree and, therefore, has standing to seek modification of the alimony award. The plaintiff argues that the executrix does not have standing because the lifetime alimony provision was agreed upon by the plaintiff and the defendant during the course of their divorce proceedings and, therefore, the enforcement of the alimony payments constitutes a harm to the defendant, whereas any harm alleged by the executrix is derivative of such harm to the defendant. We agree with the executrix that the court improperly concluded that she lacked standing to seek modification of the alimony award.

As we previously iterated, Judge Tindill, in her December 15, 2020 ruling, concluded that the alimony award was binding upon the defendant's estate. If the defendant were still alive, he would have a procedural mechanism to move to modify the alimony award based on a substantial change in circumstances pursuant to General Statutes § 46b-86,[9] which gives the court continuing jurisdiction to modify alimony. The defendant is

[9] General Statutes § 46b-86 provides in relevant part: "(a) Unless and to the extent that the decree precludes modification, any final order for the

deceased, however, and the estate of the defendant can be heard only through the executrix.

The plaintiff contends that, although the defendant would suffer a direct harm from the alimony payments if he were alive, the executrix' potential harm is merely derivative of the defendant's harm. We disagree with this notion. The defendant in this case is deceased and, therefore, cannot suffer any harm. Rather, the executrix "stands in the shoes" of the defendant. *Iino* v. *Spalter*, 192 Conn. App. 421, 427, 218 A.3d 152 (2019); see id. (permitting exercise of personal jurisdiction over decedent's executrix because executrix "stands in the shoes of the decedent for purposes of the action"). The present action is distinct from the cases cited by the plaintiff, in which the courts determined that the purported harms claimed to have been incurred by the plaintiffs were indirect, in that in those cases there were other identifiable parties who had been harmed directly and were free to seek a remedy. See *Connecticut State Medical Society* v. *Oxford Health Plans (CT), Inc.*, 272 Conn. 469, 479, 863 A.2d 645 (2005) (holding that plaintiff lacked standing because "all of the injuries that the plaintiff allegedly suffered derive[d] solely and exclusively from the harm allegedly visited upon [other individuals] . . . [and] those directly injured by the defendant's allegedly improper conduct . . . [were] themselves free to seek redress" (emphasis omitted)); *Ganim* v. *Smith & Wesson Corp.*, supra, 258 Conn. 359 (holding that harm was indirect and there were identifiable "directly injured parties who could presumably . . . remedy the harms directly caused by the defendants' conduct and thereby obtain compensation,

periodic payment of permanent alimony or support, an order for alimony or support pendente lite or an order requiring either party to maintain life insurance for the other party or a minor child of the parties may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party . . . ."

and deter the defendants from continuing their tortious conduct"). By contrast, in the present case, the harm that would have been incurred by the defendant were he still alive, i.e., the depletion of his assets, would instead be incurred directly by his estate, for which the executrix is the sole legal representative. Thus, the potential harm to the estate, which the executrix represents, by way of alimony payments is not "indirect, remote or derivative" of any injury to the defendant, who is not alive and experiencing such harm but, rather, is "direct." *Ganim* v. *Smith & Wesson Corp.*, supra, 346–48.

To support her argument, the plaintiff also cites to *Manter* v. *Manter*, 185 Conn. 502, 441 A.2d 146 (1981). In *Manter*, our Supreme Court upheld the trial court's denial of a postdissolution motion to intervene filed by the plaintiff's former spouse and the adoptive father of the plaintiff's children, who was seeking to intervene to request custody or visitation rights of the plaintiff's children. Id., 503–504, 509. In its decision, our Supreme Court stated that the "intervenor's posture is derivative; he assumes his role only by virtue of an action already shaped by the original parties. He must, therefore, take his controversy as he finds it and may not use his own claims to restyle or resuscitate their action." Id., 506. The court concluded that, "[i]n the circumstances of this case, the trial court could reasonably have concluded that no controversy existed when [the proposed intervenor] attempted to intervene." Id., 507. The case at hand is factually distinct from *Manter*, however, as the executrix is not using her own claims to restyle or resuscitate the dissolution action but, rather, is taking the place of the defendant in "an action already shaped by the original parties." Id., 506. The modification of alimony was a controversy contemplated by the plaintiff and the defendant and was an ongoing issue over which the court had continuing jurisdiction.

The plaintiff's reliance on *Welsh* v. *Welsh*, 4 Conn. Supp. 470 (1937), also is misplaced, as that case pertains to the issue that was adjudicated in Judge Tindill's December, 2020 ruling. As the plaintiff notes, *Welsh* stands for the proposition that the death of that plaintiff's former husband did not terminate the separation agreement between them because the agreement was validly entered into and expressly indicated that the alimony would be binding against the husband's estate. Id., 473. This holding, although potentially relevant to the issue of whether the alimony award was enforceable against the defendant's estate, is not relevant to the present issue of whether the executrix has standing to seek modification of the alimony based on the terms outlined in the separation agreement. As set forth previously in this opinion, the court maintains continuing jurisdiction to modify alimony pursuant to § 46b-86. Moreover, the plaintiff and the defendant included specific provisions in the separation agreement that could terminate the defendant's alimony obligation, including the plaintiff's cohabitation, remarriage, or death. Thus, although it is true that the defendant's estate, via the executrix, is bound to adhere to the alimony award, there are delineated circumstances pursuant to which the award may be modified or terminated in the separation agreement and/or § 46b-86.

As the executrix notes, this conclusion is further bolstered by General Statutes § 45a-234, which enumerates several responsibilities of the executrix that are consistent with this holding. Section 45a-234 (18), for example, provides the executrix with the power "[t]o compromise, adjust, arbitrate, sue on or defend, abandon, or otherwise deal with and settle claims in favor of or against the estate or trust as the fiduciary shall deem advisable . . . ." Moreover, § 45a-234 (30) provides the executrix with the power to "complete performance of the decedent's valid executory contracts which, at the

time of the decedent's death, had not been fully performed.''

Simply stated, the fundamental question underlying the doctrine of standing is "whether the [complaining party] is the proper party to assert the claim at issue''; (emphasis omitted; internal quotation marks omitted) *Hamburg* v. *Hamburg*, supra, 182 Conn. App. 345; and, in the present case, the executrix is the only individual who properly can move to modify the alimony award on behalf of the estate. See *Silver* v. *Holtman*, 114 Conn. App. 438, 443, 970 A.2d 740 (2009) (holding that executrix is "only person who has standing to bring . . . claims [on behalf of estate] because of her representative capacity''). In sum, we conclude that the executrix had standing to seek modification of the alimony award.

The judgment is reversed and the case is remanded for further proceedings to consider the merits of the executrix' second amended postjudgment motion for modification of the alimony award.

In this opinion the other judges concurred.